*303
 
 Battle, J.
 

 That part of the promise of the defendant, by which he undertook to pay the debts of his son was clearly within the statute of frauds, and his Honor was right in holding that the plaintiff could not recover the amount of them, because the promise was not evidenced in writing. The son remained a debtor to the plaintiff, as much after the defendant’s promise was made, as he was before, and the promise could have no other effect than to make the defendant answerable for the debts of his son. Ve are entirely unable to distinguish the case from that of
 
 Britton
 
 v. Thrailkill, 5 Jones’ Rep. 329, which has been so recently decided in this Court, as to make it unnecessary to refer to any other. That case, like the present, was a suit upon a promise by a father to pay the debts of his son. It appeared upon the trial, that the son was making preparation to leave the State, and the defendant, his father, was desirous to facilitate and hasten his departure. The plaintiff, having debts against the son, was about to take out a bail-warrant against him, when the father promised that if the plaintiff would not do so, but would permit his so to leave the State, he would pay all the debts which his son owed him.— The plaintiff did forbear, and upon the father’s failing to perform his promise, the suit was brought to enforce it. A recovery was resisted upon the ground that the promise, not being in writing, was within the statute of frauds. This Court held the obj ect-ion to be good, saying th at the “ promise sued on, was, in so many words, a promise to pay the debt of another, which was superadded to the original promise, which remained in full force.”
 

 There are many cases in which parol promises, if executed, w'ould,
 
 inoidentallyh&vQ
 
 discharged the debts of another person, and which have yet been decided not to have come within the operation of the statute. These will be found arranged and commented upon in the work referred to by the plaintiff’s counsel. See 2 Parsons on Contracts, part 2nd, chap. 4, p. 284. The principles upon which some of these cases have been held to be excepted out of the statute, are so refined as to be almost unfit for practical use. They have so narrowed
 
 *304
 
 the grounds upon which the statute was intended to be based, as to destroy, to some extent, its beneficial effect. But, whether they are to be adhered to or not, we believe that no case has, as yet, gone the length of holding that a parol promise to pay the debt of another, is binding, where the debt remains in full force against the original debtor, notwithstanding the promise. In such a case, no ingenuity of construction can make the promise any thing else than one to be answerable for the debt of another, which is directly and plainly within both the words and intent of the statute.
 

 The other part of the defendant’s promise, by which he engaged to pay the plaintiff’s expenses in going from the defendant’s residence to Wilmington, and such as he might incur in releasing his son from jail, and then returning to his own home in Robeson county, was clearly binding upon the defendant, and his agent accordingly paid them. The expenses of the plaintiff, in his trip to Wilmington -were incurred at the request of the defendant’s son, and it is contended for the defendant that his promise to pay them stands upon the same footing with that to pay the debts of his son. On the other hand, it is insisted for the plaintiff, that all the expenses of both trips to Wilmington, formed one entire consideration for the defendant’s promise, just as if he had agreed to pay a certain sum of money of the same amount with the entire expenses incurred by the plaintiff in his efforts to liberate the defendant’s son. It is unnecessary for us to decide which view is correct, for supposing that the plaintiff could recover for the expenses sustained by him'antecedent to the defendant’s promise, wre think that he ought to have given the defendant notice of such claim, and the amount, so that he might have had an opportunity of paying it, in order to avoid the trouble and expense of a law suit. Indeed the defendant’s agent did pay the plaintiff forty or fifty dollars on account of his éxpenses and services in going to Wilmington, and it may be, for all that we can see, that the expenses of both trips were covered by that amount. At all events, we are of opinion that the defeirdant ought to have had notice, before he was sued, what sum, if any,
 
 *305
 
 beyond the amount paid, was claimed an account of the expenses of the first trip.
 

 Pee CueiaM, The judgment must be affirmed.